**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR 08 53-01ML |
| v. | : | |
| BRUCE G. LAPIERRE | : | 18 U.S.C. § 371 |
| ALBERT R. MARTIN | | 26 U.S.C. § 7201 |
| LORRAINE A. MARTIN | : | 18 U.S.C. § 2 |

**INDICTMENT**

FILED
JUN 18 2008
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

The Grand Jury charges that:

**COUNT 1**

**Introduction**

At all times material to this Indictment, unless otherwise indicated:

1. Defendant, BRUCE LAPIERRE, resided at various addresses in Rhode Island, including in Pascoag, Rhode Island.

2. Defendant, ALBERT MARTIN, resided in Woonsocket, Rhode Island.

3. Defendant, LORRAINE MARTIN, wife of defendant ALBERT MARTIN, resided in Woonsocket, Rhode Island.

4. Classic Machine, located in Woonsocket, Rhode Island, is a machine shop business owned and operated by defendants BRUCE LAPIERRE and ALBERT MARTIN. The business machined metal and plastic parts for third-party manufacturers and customers in the New England area. Third-party customers typically sent schematics and designs to Classic Machine for the machining of parts that were then sold to end-user customers as components of

larger manufacturered products.

5. Banner Technologies, L.P., is a Colorado-based limited partnership established by the defendants on or about April 27, 1998. The defendants named as the sole general partner of Banner Technologies an individual, known to the Grand Jury as C.D., having no personal or business relationship to the defendants or the machine shop business. The defendants used the name Banner Technologies for purposes of receiving business income from customers of Classic Machine.

6. Circle Machine is a business name which defendants BRUCE LAPIERRE and ALBERT MARTIN began using to conduct the machine shop business in or about June 2001.

7. Northeast Systems, Inc., is a business name which defendants BRUCE LAPIERRE and ALBERT MARTIN began using to conduct their machine shop business in or about December 2003.

8. Your Virtual Office, later called Office Services, was a business formed and operated in Massachusetts by individuals, known and unknown to the Grand Jury, that provided "private" banking services to clients seeking anonymity. To ensure the anonymity of clients and their income, Your Virtual Office/Office Services maintained accounts at multiple banks, titled in the names "Financial Factors," "Mountain Management," and "Tri-State Machine." Business receipts and other monies belonging to numerous clients were deposited and commingled within the accounts titled in the names of Financial Factors, Mountain Management, and Tri-State Machine, while the individuals running this "private" banking service maintained internal, non-public records in order to track the account balances and payment activity belonging to each client. To withdraw money, clients directed Your Virtual Office/Office Services to write checks,

from the accounts titled in the names Financial Factors, Mountain Management, and Tri-State Machine, to third-parties for personal and business-related expenses, and to send cash via mail or delivery. By commingling the funds of numerous clients into bank accounts titled in names other than the clients themselves, Your Virtual Office/Office Services helped clients maintain anonymity and "privacy," and to conceal assets and income.

9. Calico Management, Ltd., located in Rhode Island, began providing anonymous bank account services similar to Your Virtual Office/Office Services in or about February 2003. Calico Management maintained bank accounts titled in the name of Calico Management. Business receipts and other monies belonging to numerous clients were deposited and commingled into the Calico Management accounts, while internal records were maintained by Calico Management to track the account balances and payment activity belonging to each client. By commingling the funds of numerous clients into bank accounts titled in names other than the clients themselves, Calico Management, like Your Virtual Office/Office Services, helped clients maintain anonymity and "privacy," and to conceal assets and income.

10. The Internal Revenue Service ("IRS") is an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States.

11. The tax laws of the United States require every citizen and resident of the United States who receives gross income in excess of the minimum filing amount established by law for a particular tax year to annually make and file an income tax return for that tax year. Individuals are required to prepare and file income tax returns on Form 1040, "U.S. Individual Income Tax Return."

12. Between 1997 and 2003, defendants BRUCE LAPIERRE and ALBERT MARTIN received substantial gross income through the sale of machined metal and plastic parts that would have required them to make and file individual income tax returns. Defendants failed to file any tax returns with the IRS during these years.

13. IRS Form 1099 ("Miscellaneous Income"), similar in purpose to IRS Form W-2 ("Wage and Tax Statement"), is a form prepared by third-party payers documenting compensation and other income paid to non-employee workers (such as independent contractors) and other payees (such as businesses receiving payments from customers). At year end, a third-party payer is generally required to prepare Form 1099 documenting compensation paid to individuals and non-incorporated businesses. Through the use of Forms 1099 and W-2, the IRS is able to determine compensation and income received by taxpayers.

14. A Currency Transaction Report ("CTR") is a report that financial institutions within the United States are required by law to file for each deposit, withdrawal, exchange of currency, or other payment or transfer by, through, or to a financial institution which involves a currency transaction of more than $10,000.

**The Conspiracy**

15. From in or about January 1997 and continuing to and including March 2004, both dates being approximate and inclusive, within the Judicial District of Rhode Island and elsewhere, the defendants,

**BRUCE LAPIERRE, ALBERT MARTIN, and LORRAINE MARTIN,**

together with others known and unknown to the Grand Jury, did unlawfully and knowingly combine, conspire, confederate, and agree to defraud the United States and an agency thereof, to

wit the IRS of the United States Department of Treasury.

**Object Of The Conspiracy**

16. It was an object of the conspiracy that the defendants, BRUCE LAPIERRE, ALBERT MARTIN, and LORRAINE MARTIN, as well as others known and unknown to the Grand Jury, would and did conspire to defraud the United States of America and the IRS by impeding, impairing, defeating, and obstructing through deceitful and dishonest means the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment and collection of income taxes.

**Manner And Means Of The Conspiracy**

17. As a part of the conspiracy, and in order to further its objectives, defendants BRUCE LAPIERRE, ALBERT MARTIN, and LORRAINE MARTIN, together with others known and unknown to the Grand Jury, used multiple nominee entities and business names to conduct the machine shop business located in Woonsocket, Rhode Island.

18. It was further part of the conspiracy that the defendants, BRUCE LAPIERRE, ALBERT MARTIN, and LORRAINE MARTIN, together with others known and unknown to the Grand Jury, caused the filing of a fraudulent application for an Employer Identification Number ("EIN") for Banner Technologies with the IRS. On the application, defendants caused to be listed an individual, known to the Grand Jury as C.D., as the general partner of Banner Technologies. As defendants well knew and believed, this individual was not the general partner of Banner Technologies, and did not otherwise participate in, or conduct any part of, the business of Banner Technologies and the machine shop business.

19. It was further part of the conspiracy that defendants BRUCE LAPIERRE and ALBERT MARTIN, together with others known and unknown to the Grand Jury, as a way to fraudulently conceal business receipts from the IRS, avoided opening bank accounts either in their names or the names of their business. Instead, the defendants utilized a number of bank accounts titled in names other than the business, including: (1) defendant LORRAINE MARTIN's personal bank account; (2) the "private" banking services of Your Virtual Office/Office Services; and (3) the "private" banking services of Calico Management.

20. It was further part of the conspiracy that the defendants, BRUCE LAPIERRE, ALBERT MARTIN, and LORRAINE MARTIN, used money orders to pay for expenses in an effort to conceal business activity from the IRS.

21. It was further part of the conspiracy that the defendants, BRUCE LAPIERRE, and ALBERT MARTIN, in order to conceal business receipts from the IRS, frequently cashed checks from customers, under $10,000, by utilizing check cashing services or by going to the customer's bank.

22. It was further part of the conspiracy that the defendants, BRUCE LAPIERRE, ALBERT MARTIN, and LORRAINE MARTIN, to avoid the submission of Currency Transaction Reports ("CTRs") by financial institutions, deposited, rather than cashed, checks exceeding $10,000 into defendant LORRAINE MARTIN'S personal account, as well as the accounts of the anonymous banking services that defendants enlisted.

23. It was further part of the conspiracy that the defendants, BRUCE LAPIERRE, ALBERT MARTIN, and LORRAINE MARTIN utilized two post office boxes to further conceal business receipts from the IRS.

24. It was further part of the conspiracy that defendants BRUCE LAPIERRE and ALBERT MARTIN, together with others known and unknown to the Grand Jury, caused the machine shop business to use aliases and fictitious names, in addition to the entities described above, when conducting business with third parties.

25. It was further part of the conspiracy that defendant BRUCE LAPIERRE sought to impair, impede, and obstruct an IRS investigation of the machine shop business's income by renaming business assets, by sending false and frivolous letters to the IRS claiming he was not required to file tax returns or pay taxes, and by directing a financial institution not to comply with a lawfully issued IRS summons for records.

**Overt Acts Performed In Furtherance Of The Conspiracy**

In furtherance of the conspiracy and to accomplish its objectives and purposes, the following overt acts, among others, were committed by one or more of the coconspirators, in the District of Rhode Island and elsewhere:

26. On or about January 6, 1997, defendant BRUCE LAPIERRE cashed a check in amount of $7,920 reflecting business receipts from Tech Industries, Inc.

27. On or about September 24, 1997, defendant LORRAINE MARTIN caused a check for $22,522, payable to BRUCE LAPIERRE, and representing receipts of the machine shop business, to be deposited into her personal bank account.

28. On or about October 14, 1997, defendant LORRAINE MARTIN caused a check for $500 to be drawn and written from her personal bank account, payable to cash.

29. On or about October 15, 1997, defendant LORRAINE MARTIN caused a check for $424 to be drawn and written from her personal bank account, payable to Nightengale Metals.

30. On or about February 27, 1998, defendant ALBERT MARTIN cashed a check for $4,080, payable to ALBERT MARTIN/CLASSIC MACHINE, representing receipts of the machine shop business.

31. On or about March 16, 1998, defendant BRUCE LAPIERRE cashed a check for $8,577, payable to BRUCE LAPIERRE, representing receipts of the machine shop business.

32. On or about April 7, 1998, defendant LORRAINE MARTIN caused a check for $24,125, payable to BRUCE LAPIERRE, and representing receipts of the machine shop business, to be deposited into her personal bank account.

33. On or about April 24, 1998, defendant LORRAINE MARTIN caused to be submitted Form SS-4, "Application for Employer Identification Number," for "Banner Technologies," signed "Lorraine Cote."

34. On or about May 1, 1998, defendant BRUCE LAPIERRE caused the name and mailing address for the machine shop business's liability and property insurance policy to be changed from "Bruce Lapierre" located in Woonsocket, Rhode Island where the defendants conducted business, to "Preferred Enterprises" with a post office box in Forestdale, Rhode Island.

35. On or about May 5, 1998, defendant BRUCE LAPIERRE caused to be formed a nominee entity in Colorado called Banner Technologies, a limited partnership, for purposes of receiving gross receipts and Forms 1099 of the machine shop business.

36. On or about July 22, 1998, defendant BRUCE LAPIERRE caused to be deposited into a bank account bearing the name "Tri-State Machine" a check for $9,942, payable to Banner Technologies, representing receipts of the machine shop business.

37. On or about September 24, 1998, defendant LORRAINE MARTIN applied for and obtained a post office box in Woonsocket, Rhode Island, in the name of Banner Technologies, LP.

38. On or about April 21, 1999, defendants BRUCE LAPIERRE and ALBERT MARTIN caused the name "William Gates" to be signed, on behalf of Classic Machine, to a packing slip from a supplier.

39. On or about April 23, 1999, defendants BRUCE LAPIERRE and ALBERT MARTIN caused the name "Jack Morgan" to be signed, on behalf of Classic Machine, to a packing slip from a supplier.

40. On or about May 29, 1999, defendant BRUCE LAPIERRE caused a check for $737 to be drawn from an account titled in the name of "Mountain Management," payable to Providence Washington Insurance Agency.

41. On or about June 25, 1999, defendant ALBERT MARTIN cashed a check for $4,816 payable to ALBERT MARTIN/CLASSIC MACHINE, representing receipts of the machine shop business.

42. On or about August 3, 1999, defendant BRUCE LAPIERRE executed an affidavit authorizing Financial Factors to deposit checks payable to Banner Technologies into accounts held in the name of Financial Factors.

43. On or about August 3, 1999, defendant BRUCE LAPIERRE caused to be deposited into a bank account bearing the name "Financial Factors" a check for $12,703, payable to Banner Technologies, representing receipts of the machine shop business.

44. On or about March 16, 2000, defendant BRUCE LAPIERRE caused a check for $453.98 to be drawn from an account titled in the name of "Financial Factors," payable to Nightengale Metals.

45. On or about June 10, 2000, defendant BRUCE LAPIERRE caused to be changed the name under which the machine shop business's liability and property insurance policy was held from "Preferred Enterprises" to "Royal Enterprises."

46. On or about June 24, 2000, defendant BRUCE LAPIERRE, in response to an IRS notice informing him of a tax lien, submitted to the IRS a false and frivolous letter claiming that he was not required to file returns or pay taxes when, in truth, defendant knew he was required to do so.

47. On or about July 24, 2000, defendant BRUCE LAPIERRE obtained a money order, payable to Citibank USA, in the amount of $700.

48. On or about October 10, 2000, defendant LORRAINE MARTIN caused a check for $3,797, payable by "Mountain Management" and to LORRAINE MARTIN, to be deposited into her personal bank account.

49. In or about November 2000, defendants BRUCE LAPIERRE and ALBERT MARTIN caused to be listed "Al Ross & Sons" as the owners of Classic Machine on a credit application with a third-party.

50. On or about December 1, 2000, defendant ALBERT MARTIN cashed a check for $8,627, payable to ALBERT MARTIN/CLASSIC MACHINE, representing receipts of the machine shop business.

51. On or about December 15, 2000, defendant LORRAINE MARTIN caused a check for $10,149, payable to ALBERT MARTIN, and representing receipts of the machine shop business, to be deposited into her personal bank account.

52. On or about June 13, 2001, defendant BRUCE LAPIERRE changed the name and contact information for an MCI telephone account concerning the machine shop business from "Preferred Enterprises – Bruce Lapierre" to "Circle Machine - Shawn Murphy."

53. On or about June 22, 2001, defendant BRUCE LAPIERRE caused to be deposited into a bank account bearing the name "Mountain Management" a check for $13,718, payable to Banner Technologies, representing receipts of the machine shop business.

54. On or about September 19, 2001, defendant BRUCE LAPIERRE caused a check for $646.01 to be drawn from an account titled in the name of "Mountain Management," payable to Nightengale Metals.

55. On or about December 5, 2001, defendant ALBERT MARTIN cashed a check for $9,862, payable to ALBERT MARTIN/CLASSIC MACHINE, representing receipts of the machine shop business.

56. On or about January 25, 2002, defendant LORRAINE MARTIN caused a check for $16,210, payable to ALBERT MARTIN, and representing receipts of the machine shop business, to be deposited into her personal bank account.

57. On or about April 18, 2002, defendant ALBERT MARTIN cashed a check for $6,683, payable to ALBERT MARTIN/CLASSIC MACHINE, representing receipts of the machine shop business.

58. On or about July 9, 2002, defendant LORRAINE MARTIN caused a check for $6,148 to be drawn from her personal account, payable to LORRAINE MARTIN, and cashed.

59. On or about July 9, 2002, defendant LORRAINE MARTIN caused a check for $7,470 to be drawn from her personal account, payable to LORRAINE MARTIN, and cashed.

60. On or about September 18, 2002, defendant LORRAINE MARTIN caused a check for $532.17 to be drawn and written from her personal account, payable to Nightengale Metals.

61. On or about October 4, 2002, defendant BRUCE LAPIERRE caused to be deposited into a bank account bearing the name "Mountain Management" a check for $10,345, payable to Banner Technologies, representing receipts of the machine shop business.

62. On or about October 10, 2002, defendant BRUCE LAPIERRE caused a check for $141.24 to be drawn from an account titled in the name of "Mountain Management," payable to Nightengale Metals.

63. On or about February 12, 2003, defendant LORRAINE MARTIN caused a check for $1,065, payable by "Calico Management" and to LORRAINE MARTIN, to be deposited into her personal bank account.

64. On or about February 21, 2003, defendant ALBERT MARTIN cashed a check for $289, payable to ALBERT MARTIN/CLASSIC MACHINE, representing receipts of the machine shop business.

65. On or about February 24, 2003, defendant LORRAINE MARTIN caused a check for $524.25 to be drawn and written from her personal account, payable to Zodiac Tool and Cutter Grinding.

66. On or about March 3, 2003, defendant LORRAINE MARTIN caused a check for $6,588 to be drawn from her personal account, payable to LORRAINE MARTIN, and cashed.

67. On or about May 5, 2003, defendant BRUCE LAPIERRE caused to be submitted to Strata Bank a letter, signed "Classic Machine," objecting to an IRS summons seeking bank records, and asserting that the bank would be in violation of law if it complied with the IRS summons.

68. On or about May 30, 2003, defendant LORRAINE MARTIN caused a check for $430.94 to be drawn and written from her personal account, payable to Alliant Metals.

69. On or about November 11, 2003, defendant BRUCE LAPIERRE caused a check for $390.51 to be drawn from an account titled in the name of "Calico Management," payable to Nightengale Metals.

70. On or about November 26, 2003, defendant BRUCE LAPIERRE caused to be deposited into a bank account bearing the name "Calico Management" a check for $17,433, payable to Banner Technologies, representing receipts of the machine shop business.

71. On or about December 9, 2003, defendant LORRAINE MARTIN caused a check for $2,530, payable by "Calico Management" and to LORRAINE MARTIN, to be deposited into her personal bank account.

72. On or about December 18, 2003, defendant BRUCE LAPIERRE informed a customer that the machine shop business, formerly known as Classic Machine, now operates under the name "Northeast Systems, Inc."

73. On or about February 5, 2004, defendant BRUCE LAPIERRE caused to be deposited into a bank account bearing the name "Calico Management" a check for $1,177,

payable to Banner Technologies, representing receipts of the machine shop business.

74. On or about March 7, 2004, defendant BRUCE LAPIERRE caused to be changed the name and contact information for an MCI telephone account concerning the machine shop business from "Circle Machine - Shawn Murphy" to "Northeast Systems, Inc. - Katherine Dial."

All in violation of Title 18, United States Code, Section 371.

**COUNT 2**

75. The Grand Jury realleges and incorporates by this reference paragraphs 1 through 14 of Count One of this Indictment in their entirety as though fully set forth herein.

76. That during the calendar year 2002, the defendant,

**BRUCE LAPIERRE,**

a resident of the State of Rhode Island, had and received taxable income in the sum of approximately $81,061; that upon said taxable income there was owing to the United States of America a substantial income tax; that well knowing and believing the foregoing facts, the defendant, BRUCE LAPIERRE, for the tax year 2002, in the District of Rhode Island, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar year by failing to make an income tax return on or before April 15, 2003, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay the Internal Revenue Service said income tax, and by committing the following acts: conducting the machine shop business using various business names; using anonymous "private" banking services for purposes of concealing financial transactions; using money orders to pay for expenses; using the personal bank account of defendant LORRAINE MARTIN to conceal financial transactions; and directing and/or causing a number of checks to be cashed

reflecting receipts of the machine shop business.

In violation of Title 26, United States Code, Section 7201.

**COUNT 3**

77. The Grand Jury realleges and incorporates by this reference paragraphs 1 through 14 of Count One of this Indictment in their entirety as though fully set forth herein.

78. That during the calendar year 2003, the defendant,

**BRUCE LAPIERRE,**

a resident of the state of Rhode Island, had and received taxable income in the sum of approximately $80,422; that upon said taxable income there was owing to the United States of America a substantial income tax; that well knowing and believing the foregoing facts, the defendant, BRUCE LAPIERRE, for the tax year 2003, in the District of Rhode Island, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar year by failing to make an income tax return on or before April 15, 2004, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay the Internal Revenue Service said income tax, and by committing the following acts: conducting the machine shop business using various business names; using anonymous "private" banking services for purposes of concealing financial transactions; using money orders to pay for expenses; using the personal bank account of defendant LORRAINE MARTIN to conceal financial transactions; and directing and/or causing a number of checks to be cashed reflecting receipts of the machine shop business.

In violation of Title 26, United States Code, Section 7201.

**COUNT 4**

79. The Grand Jury realleges and incorporates by this reference paragraphs 1 through 14 of Count One of this Indictment in their entirety as though fully set forth herein.

80. That during the calendar year 2002, the defendant,

**ALBERT MARTIN,**

a resident of the state of Rhode Island, had and received taxable income in the sum of approximately $74,911; that upon said taxable income there was owing to the United States of America a substantial income tax; that well knowing and believing the foregoing facts, the defendant, ALBERT MARTIN, for the tax year 2002, in the District of Rhode Island, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar year by failing to make an income tax return on or before April 15, 2003 as required by law, to any proper officer of the Internal Revenue Service, by failing to pay the Internal Revenue Service said income tax, and by committing the following acts: conducting the machine shop business using various business names; using anonymous "private" banking services for purposes of concealing financial transactions; using the personal bank account of defendant LORRAINE MARTIN to conceal financial transactions; using money orders to pay for expenses; and directing and/or causing a number of checks to be cashed reflecting receipts of the machine shop business.

In violation of Title 26, United States Code, Section 7201.

**COUNT 5**

81. The Grand Jury realleges and incorporates by this reference paragraphs 1 through 14 of Count One of this Indictment in their entirety as though fully set forth herein.

82. That during the calendar year 2003, the defendant,

**ALBERT MARTIN,**

a resident of the state of Rhode Island, had and received taxable income in the sum of approximately $72,622; that upon said taxable income there was owing to the United States of America a substantial income tax; that well knowing and believing the foregoing facts, the defendant, ALBERT MARTIN, for the tax year 2003, in the District of Rhode Island, did willfully attempt to evade and defeat the said income tax due and owing by him to the United States of America for said calendar year by failing to make an income tax return on or before April 15, 2004, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay the Internal Revenue Service said income tax, and by committing the following acts: conducting the machine shop business using various business names; using anonymous "private" banking services, for purposes of concealing financial transactions; using money orders to pay for expenses; using the personal bank account of defendant LORRAINE MARTIN to conceal financial transactions; and directing and/or causing a number of checks to be cashed reflecting receipts of the machine shop business.

In violation of Title 26, United States Code, Section 7201.

**COUNT 6**

83. The Grand Jury realleges and incorporates by this reference paragraphs 1 through 14 of Count One of this Indictment in their entirety as though fully set forth herein.

84. That during the calendar year 2002, the defendant, ALBERT MARTIN, a resident of the state of Rhode Island, had and received taxable income in the sum of approximately $74,911; that upon said taxable income there was owing to the United States of America a

substantial income tax; that well knowing and believing the foregoing facts, the defendant,

**LORRAINE MARTIN,**

for the tax year 2002, in the District of Rhode Island, did willfully attempt to evade and defeat the said income tax due and owing by ALBERT MARTIN to the United States of America for said calendar year, and did aid and abet in attempting to evade and defeat said income tax, by committing the following acts: using her personal bank account for purposes of depositing business income of Classic Machine and Banner Technologies, and paying expenses; and causing a number of checks written from her personal bank account to be cashed.

In violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

**COUNT 7**

85. The Grand Jury realleges and incorporates by this reference paragraphs 1 through 14 of Count One of this Indictment in their entirety as though fully set forth herein.

86. That during the calendar year 2003, the defendant, ALBERT MARTIN, a resident of the state of Rhode Island, had and received taxable income in the sum of approximately $72,622; that upon said taxable income there was owing to the United States of America a substantial income tax; that well knowing and believing the foregoing facts, the defendant,

**LORRAINE MARTIN,**

for the tax year 2003, in the District of Rhode Island, did willfully attempt to evade and defeat the said income tax due and owing by ALBERT MARTIN to the United States of America for said calendar year, and did aid and abet in attempting to evade and defeat said income tax, by committing the following acts: using her personal bank account for purposes of depositing

business income of Classic Machine and Banner Technologies and paying expenses; and causing a number of checks written from her personal bank account to be cashed.

In violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

A TRUE BILL:

REDACTED

ROBERT CLARK CORRENTE
United States Attorney

BY: ______________________
JOHN N. KANE, JR.
Trial Attorney
U.S. Department of Justice
Tax Division

______________________
JORGE ALMONTE
Trial Attorney
U.S. Department of Justice
Tax Division

______________________
STEPHEN G. DAMBRUCH
Chief, Criminal Division

DATED: 6/18/08